IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

United States of America,                          Case No. 3:09 CR 427

                           Plaintiff,          MEMORANDUM OPINION
                                          AND ORDER
     -vs-
                                         JUDGE JACK ZOUHARY
Chan Ho Shin,

                           Defendant.

## INTRODUCTION

Nearly four years ago, Defendant Chan Ho Shin pled guilty in this Court to four counts of filing false tax returns in violation of federal law (Doc. 5).  He was sentenced to probation.  At that time, Shin was aware his conviction could lead to deportation from the United States; however, he believed he stood a good chance of evading removal proceedings.  As it turns out, immigration officials deemed Shin's crime to be an "aggravated felony," a classification used to describe a category of offenses carrying particularly harsh consequences for non-citizens.  He now faces deportation.

Shin, who can no longer file an appeal in this case or seek habeas corpus relief, petitions this Court for a writ of error *coram nobis* (Doc. 28).  Shin attempts to elude his upcoming removal proceedings by arguing his conviction should be set aside because "his decision to plead guilty was the product of the ineffective assistance of counsel" (Doc. 28 at 9).  The matter has been fully briefed (Docs. 28, 33 & 37).

**BACKGROUND**

Shin, a resident alien from the Republic of Korea, operates retail stores throughout the Toledo, Ohio area. In early 2008, Shin learned he was the subject of a criminal investigation by the Internal Revenue Service ("IRS") regarding unreported business income from 2002 through 2005. The Tax Division of the Department of Justice eventually authorized Shin's prosecution for filing false income tax returns in violation of 26 U.S.C. § 7206(1).

From the time he became aware of the potential for criminal charges, Shin was concerned about the effect a conviction would have on his immigration status (Doc. 28 at 2). Shin, who at that time was a lawful permanent resident, was primarily concerned that a conviction would result in his deportation from the United States. Shin's counsel expressed these concerns with IRS representatives and with the Assistant United States Attorney in pre-charging discussions. Shin's counsel also wrote a letter to the Assistant United States Attorney, exploring options that might permit Shin to stay in the country despite a conviction under Section 7206. In the letter, Shin's counsel explained that, while the majority of cases hold a Section 7206 violation with a $10,000 or more loss, constitutes an "aggravated felony" subject to deportation, immigration officials cannot deem the conviction an aggravated felony if the loss amount is excluded from the charging instrument, all subsequent pleadings, and the Presentence Report (Doc. 33-1 at 1).

Shin's counsel recommended Shin plead guilty to four counts of making false statements in his tax returns in violation of Section 7206(1), and admit to an understatement of income totaling $263,963 (Doc. 28 at 8). The four-count Information did not state the amount of tax loss resulting from his offenses. Counsel also advised Shin his conviction *could* lead to removal from the country (Doc. 28-2 at 2). Shin agreed to the plea regardless, and in January 2010, this Court sentenced him

2

to five years' probation, including four special conditions:  (1) five months of home confinement; (2) 175 hours of community service; (3) a $7,500 fine; and (4) restitution in the amount of $73,310 (Doc. 12).

After completing his period of home detention, and with permission from his probation officer, Shin traveled to the Republic of Korea.  In mid-September 2010, on his return trip to the United States, Shin was stopped at Detroit Metro Airport by United States Customs and Border Protection Service agents.  After acknowledging his conviction for filing false tax returns, Shin was served with a notice to appear at removal proceedings, which explained Shin was deportable because his conviction was for a crime of moral turpitude under 8 U.S.C. § 1182(a)(1)(A)(i)(I).  Shin was released and paroled into the United States pending the resolution of his removal proceedings, currently scheduled for March 2013 (Doc. 28 at 4).

In 2011, Shin learned from the lawyer representing him in his immigration proceeding that the Supreme Court was to hear the case of *Kawashima v. Holder*, --- U.S. ---, 132 S. Ct. 1166 (2012). That case involved the question of whether violations of Section 7206(1) are "aggravated felonies" subject to deportation when the loss exceeds $10,000.  According to Shin, his immigration attorney informed him that he would have "no chance of avoiding deportation" if the Court ruled against Kawashima (Doc. 28 at 4).  This is so because a conviction for an "aggravated felony" is not subject to discretionary cancellation under 8 U.S.C. § 1229b.  In other words, non-citizens who have been convicted of an "aggravated felony" cannot seek relief that would spare them from deportation. Because Shin's notice to appear did not allege his conviction under Section 7206(1) was for an "aggravated felony," Shin did not know he was subject to automatic removal until his lawyer advised

him of *Kawashima*'s pendency.  He now argues he would not have pled guilty had he known or been told the true consequences of his plea.

Facing inevitable deportation, Shin began seeking out legal advice and counsel regarding the possibility of withdrawing his guilty plea or otherwise setting aside his conviction.  Under Federal Criminal Rule 11(e), a guilty "plea may be set aside only on direct appeal or collateral attack."  The time for a direct appeal has long passed, and Shin's March 2012 release from probation forecloses collateral attack by way of a 28 U.S.C. § 2255 motion.  With no other avenue for relief, Shin petitions this Court for a writ of error *coram nobis*, arguing his conviction should be set aside because "his decision to plead guilty was the product of the ineffective assistance of counsel" (Doc. 28 at 9). Specifically, Shin contends (Doc. 28 at 5):

- Counsel gave inaccurate advice regarding the immigration consequences of the guilty plea he negotiated and recommended by inaccurately telling Shin his conviction *could* -- not *would* -- lead to his removal from the United States;

- Counsel inaccurately advised Shin that not stating the tax loss amount on the record of his plea and sentencing would lessen the chances of his removal; and

- Counsel failed to negotiate a plea under 31 U.S.C. § 5324, which would *not* have provided a basis for Shin's removal, a fact of which counsel was unaware, and did not research, even though the investigation focused on Shin's cash deposits and he believed there would have been a factual basis for such a plea.

### STANDARD OF REVIEW

This Court's power to issue a writ of error *coram nobis* stems from the All Writs Act, 28 U.S.C. § 1651.  *Blanton v. United States*, 94 F.3d 227, 231 (6th Cir. 1996).  Essentially, *coram nobis* is "a remedy of last resort for petitioners who are no longer in custody pursuant to a criminal conviction."  *United States v. Mandanici*, 205 F.3d 519, 524 (6th Cir. 2000) (citing *Fleming v. United States*, 146 F.3d 88, 89–90 (2d Cir. 1998) (per curiam)).  *Coram nobis*, however, "is an extraordinary

4

writ," *Pilla v. United States*, 668 F.3d 368, 372 (6th Cir. 2012), and relief "is strictly limited to those cases in which errors of the most fundamental character have rendered the proceeding itself irregular and invalid." *Mandanici*, 205 F.3d at 524 (quoting *Foont v. United States*, 99 F.3d 76, 78 (2d Cir. 1996)).  In reviewing a petition for the writ, this Court presumes "the proceedings were correct, and the burden of showing otherwise rests on the petitioner." *Id.* (citation omitted).

To obtain *coram nobis* relief, Shin must demonstrate:  a factual error; unknown at the time of trial; of a fundamentally unjust character which probably would have altered the outcome of the challenged proceeding if it had been known. *Pilla*, 668 F.3d at 372 (citing *United States v. Johnson*, 237 F.3d 751, 755 (6th Cir. 2001)); *see also Blanton*, 94 F.3d at 231.  The Sixth Circuit has held a successful ineffective assistance claim satisfies the above factors and is thus within the scope of *coram nobis*.  *See, e.g.*, *Pilla*, 668 F.3d at 372–73; *Blanton*, 94 F.3d at 231; *United States v. Boling*, 869 F.2d 965, 972 (6th Cir. 1989).  Therefore, this Court will address Shin's ineffective assistance claim.

### DISCUSSION

Shin's claim is premised on his contention that his decision to plead guilty was the product of the ineffective assistance of counsel, which requires a showing that "counsel's conduct so undermined the proper functioning of the adversarial process . . . that it cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984).  Making this showing "is never an easy task." *Padilla v. Kentucky*, --- U.S. ---, 130 S. Ct. 1473, 1486 (2010). To succeed, Shin must prove two elements: (1) his counsel's performance was deficient; and (2) the deficient performance prejudiced his defense.  *Pilla*, 668 F.3d at 372 (citing *Strickland*, 466 U.S. at 687–88, 694).  This Court's scrutiny of the reasonableness of counsel's performance is highly deferential.

5

Indeed, counsel is strongly presumed to have rendered adequate assistance and to have made all decisions in the exercise of reasonable professional judgment and sound legal strategy. *Nix v. Whiteside*, 475 U.S. 157, 165 (1986); *Strickland*, 466 U.S. at 689–90.

To show prejudice, Shin "must demonstrate a reasonable probability that, 'but for counsel's errors, [he] would not have pleaded guilty and would have insisted on going to trial.'" *Pilla*, 668 F.3d at 372–73 (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). Of course, Shin "cannot make that showing merely by telling [this Court] now that [he] would have gone to trial then if [he] had gotten different advice." *Id.* at 373. The test is objective, not subjective; and thus, to obtain relief, Shin must convince this Court "that a decision to reject the plea bargain would have been rational under the circumstances." *Id.* (quoting *Padilla*, 130 S. Ct. at 1485).

Shin's argument on the performance element is tripartite. According to Shin, his previous counsel: (1) gave him inaccurate advice regarding the immigration consequences of his guilty plea; (2) wrongly advised him that keeping the tax loss amount from the record would lessen his chances of removal; and (3) failed to negotiate a plea deal under a separate federal statute. This Court will consider each argument below, but will address Shin's first two arguments together because they are related.

### Counsel Properly Advised Shin of the Consequences of Pleading Guilty

Shin attempts to demonstrate his counsel's deficient performance by arguing that, at the time of his criminal case, his lawyer had a duty to provide him with accurate advice regarding the effect of his criminal conviction on his immigration status. The Supreme Court first announced this duty in *Padilla*, which came five months *after* counsel advised Shin in the present case. *See Padilla*, 130

6

S. Ct. at 1473. The Government says the duty cannot be imposed retroactively (Doc. 33 at 8–11). Unsurprisingly, Shin says it can (Doc. 28 at 14–16).

The question of *Padilla*'s retroactivity has caused a stir among the circuits. *See, e.g.*, *United States v. Chaidez*, 655 F.3d 684 (7th Cir. 2011) (not retroactive); *United States v. Hong*, 671 F.3d 1147 (10th Cir. 2011) (not retroactive); *United States v. Orocio*, 645 F.3d 630 (3d Cir. 2011) (retroactive). The Sixth Circuit was presented with the retroactivity question in 2011, but opted to dodge the issue because the petitioner in that case could not show the requisite prejudice. *See Pilla*, 668 F.3d at 373 ("[W]e need not decide [*Padilla*'s retroactivity] here, because in any event Pilla cannot show prejudice."). The Supreme Court granted *certiorari* in a recent case to resolve the circuit split. *See Chaidez v. United States*, 132 S. Ct. 2101 (2012) (accepting certiorari on "whether *Padilla* applies to persons whose convictions became final before its announcement").

There is no need, however, to await the Supreme Court's decision, or to spill considerable ink on *Padilla*'s retroactivity. This is so because, even assuming *Padilla* is controlling in this case, Shin's claim must fail. Not only does Shin fail to demonstrate prejudice, he cannot establish his lawyer's conduct ran afoul of *Padilla*'s directive.

The facts of *Padilla* are distinguishable from the case at hand. In *Padilla*, the petitioner, a lawful permanent resident for over forty years, faced deportation after pleading guilty to drug distribution charges in Kentucky. 130 S. Ct. at 1477. The petitioner argued his counsel not only failed to advise him of the deportation consequences to entering a guilty plea, but also told him he "did not have to worry about immigration status since he had been in the country so long." *Id.* at 1478. The petitioner relied on his counsel's erroneous advise when he pled guilty to drug charges that made his deportation "virtually mandatory." *Id.* Indeed, the relevant immigration statute

7

unequivocally stated "[a]ny alien who at any time after admission has been convicted of a violation of . . . any law or regulation . . . relating to a controlled substance . . . is deportable."  *See* 8 U.S.C. § 1227(a)(2)(B)(i).

After a lengthy discussion on the evolving landscape of federal immigration law, the Supreme Court sided with the petitioner, holding that his counsel "could have easily determined that his plea would make him eligible for deportation simply from reading the text of the statute," which "specifically commands removal for all controlled substances convictions except for the most trivial of marijuana possession offenses." *Id.* at 1483.  The Court emphasized that the relevant statute made the removal consequence for petitioner's conviction "succinct, clear, and explicit." *Id.*  Because petitioner's adverse immigration consequences were "truly clear," counsel's duty to give correct advice was also clear. *Id.*

The *Padilla* Court, however, specifically instructed courts not to apply its newly-created "duty to advise" rule too broadly:

> Immigration law can be complex, and it is a legal specialty of its own. Some members of the bar who represent clients facing criminal charges, in either state or federal court or both, may not be well versed in it. There will, therefore, undoubtedly be numerous situations in which the deportation consequences of a particular plea are unclear or uncertain. The duty of the private practitioner in such cases is more limited. When the law is not succinct and straightforward . . . a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences.

*Id.* (emphasis added).  Accordingly, the Court clarified that counsel's duty was to simply "inform [his] client whether his plea carries a risk of deportation." *Id.* at 1486.

The relevant immigration statute in this case -- unlike *Padilla* -- is not "succinct, clear, and explicit."  Specifically, 8 U.S.C. § 1227(a)(2)(A)(iii) states an alien "convicted of an aggravated felony at any time after admission is deportable."  Nowhere does the statute mention convictions for

8

tax offenses.  In fact, as initially enacted, the term "aggravated felony" referred only to murder, drug trafficking, and trafficking of certain firearms and destructive devices.  Today, however, the definition of "aggravated felony" covers more than thirty types of offenses, the application of which often requires the skill of a learned immigration attorney.  *See* 8 U.S.C. § 1101(a)(43).  Moreover, Section 1101(a)(43), the statute that defines "aggravated felony," does not explicitly list filing false tax returns as an included offense (though the statute includes tax evasion, a separate crime under Section 7201).  Indeed, it was not until *Kawashima* -- decided two years *after* Shin was sentenced -- that the Supreme Court held willfully making and subscribing a false tax return was an aggravated felony under Section 1101(a)(43)(M)(i), and thus a deportable offense, because the crime necessarily entails "deceit."  132 S. Ct. at 1166.

Shin admits that at the time of his plea, "the question of whether his conviction would constitute an 'aggravated felony' had not been definitively addressed by the Supreme Court" (Doc. 28 at 17).  In other words, Shin's case is one of those "situations in which the deportation consequences of a particular plea [were] unclear or uncertain."  *Padilla*, 130 S. Ct. at 1483.  As such, Shin's lawyer only had a duty to advise him "that pending criminal charges may carry a risk of adverse immigration consequences."  *Id.*  That is exactly what was done (Doc. 28-2 at 2):

> I told [Shin] that his conviction, under the Criminal Information, in this case *could* lead to his removal from the United States . . . .

Shin admits as much and does not argue to the contrary (Doc. 28 at 3, 5 & 8).  According to Shin, however, his lawyer was ineffective because he did not foresee the decision in *Kawashima*, which Shin contends was a "foregone conclusion" by 2009.  He offers two arguments in support.

First, Shin asserts "the state of the law . . . clearly portended the outcome in *Kawashima*" because, at the time of his plea negotiations, three federal circuits had addressed this particular issue

9

(Doc. 28 at 17). Yes, but those circuits were not in accord. *Compare Arguelles-Olivares v. Mukasey*, 526 F.3d 171, 175 (5th Cir. 2008) (violation of Section 7206(1) involving tax losses in excess of $10,000 could be considered aggravated felony) *with Ki Se Lee v. Aschcroft*, 368 F.3d 218 (3d Cir. 2004) (violation of Section 7206(1) is not a removable offense). Given the divergent views among the few circuits that had addressed the issue, and the silence of the others, this Court cannot hold that the relevant immigration statute was, in the words of *Padilla*, "truly clear" at the time of Shin's plea.

Second, Shin argues the Supreme Court's 2009 decision in *Nijhawan v. Holder*, 557 U.S. 29 (2009), preordained the Court's later decision in *Kawashima* (Doc. 28 at 18). Not so. *Nijhawan*, a case from the Third Circuit, was decided only four months before Shin pled guilty in this case. Even if Shin's counsel -- who was *not* an immigration attorney -- had reason to know of *Nijhawan* at the time of Shin's plea, *Nijhawan* dealt with an entirely different issue. That case dealt with whether a petitioner's conviction for mail, bank, and wire fraud qualified as an aggravated felony under Section 1101(a)(43)(M)(i). *See Nijhawan*, 557 U.S. at 32. *Nijhawan* was not a tax case, and the Court did not hint, let alone address, whether a violation of Section 7206(1) is an aggravated felony subject to deportation.

Further, this Court is unpersuaded that Shin's counsel was deficient for advising him "that not stating the amount of the tax loss [] on the record of his plea and sentencing would *lessen* the chances of his removal" (Doc. 28 at 5) (emphasis added). Had counsel assured Shin that excluding the loss amount would *eliminate* his chances of removal, then Shin might have a point. That is not what happened. *Nijhawan* does make it possible for the Government to seek deportation when the loss amount is excluded from the record. But counsel's advice was not erroneous -- excluding the loss amount in a tax conviction *could* result in immigration officials not targeting the offender for removal.

10

This is especially true in light of Section 1101(a)(43)(M)(i)'s requirement that the loss "exceeds $10,000." The bottom line is Shin knew from the get-go that his conviction *could* lead to deportation, and counsel did what he could under the circumstances to lessen Shin's risk.

### Counsel Was Not Deficient In Failing to Negotiate a Different Plea

Shin also attacks his counsel for failing to pursue or investigate a possible plea arrangement for structuring monetary transactions under 31 U.S.C. § 5324. This argument fares no better (Doc. 28 at 20). Shin's sole support for his position is the assertion that "there would have been a factual basis for such a plea" because the "investigation focused on [his] cash deposits" (Doc. 28 at 5). Maybe so, but this is a tax case. Shin was investigated by the IRS for failing to include thousands of dollars worth of income on his tax returns. Speculation that the trial attorney for the Tax Division would have agreed to substitute a non-tax count for the recommended tax charges is just that, speculation. Moreover, the Government affirmatively states that, given its directive from the Tax Division, it never would have agreed to such a plea (Doc. 33 at 6). *See Lujan v. United States*, 2006 WL 2709790, *8 (E.D. Tenn. 2006) (theory that counsel could have negotiated a more favorable plea was "rank speculation, sheer conjecture, and wishful thinking," in light of the Government's assertion that it would not have agreed to a more favorable plea). Regardless, the law is well-settled that dissatisfaction with a plea deal does not rise to a showing of constitutionally ineffective counsel. *See, e.g.*, *Hunter v. United States*, 160 F.3d 1109, 115 (6th Cir. 1998) ("[W]hile [petitioner] may later have decided that he could have done better, his dissatisfaction does not rise to a showing of constitutionally ineffective counsel."); *United States v. Parker*, 609 F.3d 891, 895 (7th Cir. 2010) ("[W]hether a petitioner 'could have negotiated a better plea deal is irrelevant in the ineffective assistance context.'") (quoting *Bethel v. United States*, 458 F.3d 711, 720 (7th Cir. 2006)).

11

**Shin Cannot Demonstrate Prejudice**

Even if Shin could show his counsel's performance was deficient and fell below an objective standard of reasonableness, he cannot establish that such deficiency caused him actual prejudice. Shin argues he would not have pled guilty "[h]ad [he] known or been told that [his] guilty plea in this case would lead to [his] automatic removal from the United States" (Doc. 28 at 20). According to Shin, such a blanket assertion is a "sufficient showing" under *Hill* (Doc. 28 at 20). *Hill*, however, says the complete opposite: "[a] petitioner's allegations are insufficient to satisfy the *Strickland v. Washington* requirement of 'prejudice.'" 474 U.S. at 60. Indeed, the Sixth Circuit has clarified that a petitioner cannot satisfy the prejudice element by merely telling the court that he would have gone to trial if he had received different advice. *See Pilla*, 668 F.3d at 372–73; *see also Haddad v. United States*, 2012 WL 2478355, *3–4 (6th Cir. 2012). Rather, the test is objective, and Shin must convince this Court "that a decision to reject the plea bargain would have been rational under the circumstances." *Pilla*, 668 F.3d at 373; *see also Hill*, 474 U.S. at 59. Shin's brief is completely silent in this regard.

Notwithstanding Shin's silence, this Court is convinced that accepting the plea was certainly a rational choice in this case. A conviction following a trial would have resulted, at a minimum, in a sentencing guidelines offense level of 14, which carries a sentencing range of 15 to 21 months imprisonment. Shin's acceptance of responsibility led to a lower guidelines range and, due in large part to his cooperation, Shin was ultimately sentenced to a term of probation. Shin offers no argument that he had a realistic chance of being acquitted at trial, and there is no evidence in the record that Shin had a rational defense to the charges.

Moreover, had Shin been convicted after a trial, he would not have eliminated, or even reduced, his chances of removal. The only consequence of his counsel's "erroneous" advice --

12

assuming Shin's assertion that he would have gone to trial had he received more accurate advice --
is that he received a more lenient sentence.  In short, nothing leads to the conclusion that a rational
defendant in Shin's position would have proceeded to trial.  Shin fails to show his lawyer's advice
created a "reasonable probability" of prejudice, and thus he cannot show that the advice "'probably
. . . altered the outcome of the challenged proceeding,' as is required for a writ of *coram nobis*."  *Pilla*,
668 F.3d at 373 (quoting *Johnson*, 237 F.3d at 755).

## CONCLUSION

On one hand, Shin's situation is lamentable.  After coming to this country, Shin and his wife
were able to build a successful business and raise a family here in Toledo.  Shin became a lawful
permanent resident and was close to attaining American citizenship.  In a letter dated June 2009, his
counsel confirmed that but-for his troubles with the IRS, Shin would be a U.S. citizen today (Doc. 33-
1 at 1).  Shin was living the proverbial "American dream," but now he faces deportation.

On the other hand, Shin committed a serious crime -- he diverted hundreds of thousands of
dollars from his business for personal use, defrauding the Government over a period of years.  Had
becoming an American citizen been as important to him as he contends, Shin should have avoided
cheating and lying to the IRS.  Immigration law classifies some crimes as removable offenses, and
Shin's was one of them.  Nothing in the record demonstrates Shin received ineffective assistance of
trial counsel and, for all the reasons stated above, Shin's Petition must be denied.

IT IS SO ORDERED

_____s/ Jack Zouhary_____
JACK ZOUHARY
U. S. DISTRICT JUDGE

September 20, 2012

13